## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. _____

GREASE MONKEY INTERNATIONAL, INC., a Colorado corporation

Plaintiff,

v.

LUBE WORKS, LLC, a North Carolina limited liability company,
FLORIDA PRIDE, INC., a Florida corporation, and
DAVID C. PLYLER,

Defendants.

---

## VERIFIED COMPLAINT AND DEMAND FOR INJUNCTIVE RELIEF

---

Plaintiff, Grease Monkey International, Inc. ("GMI"), through counsel Perkins Coie LLP, for its Verified Complaint and Demand for Injunctive Relief against Defendants Lube Works, LLC, Florida Pride, Inc., and David C. Plyler ("Plyler")  (collectively "Defendants"), states and alleges as follows:

### PARTIES

1.      Plaintiff GMI is a Colorado corporation in good standing with its principal place of business located at 7100 E. Belleview Avenue, Suite 305, Greenwood Village, CO 80111. GMI is a citizen and resident of the State of Colorado.

2.      Defendant Lube Works, LLC ("Lube Works") is a North Carolina limited liability company which at times relevant hereto is doing or has done business at 5405 Ortega Boulevard, Jacksonville, Florida 32210.

3. Defendant Florida Pride, Inc. ("Florida Pride") is a Florida corporation which at times relevant hereto is doing or has done business at 1717 Blanding Boulevard, Suite 105, Jacksonville, Florida 32210.

4. Defendant Plyler is an individual who, upon information and belief, is a resident of Jacksonville, Florida.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of these claims pursuant to Section 39 of the Trademark Act of 1946, 15 U.S.C. Section 1121, the Lanham Act, 15 U.S.C. Section 1125(a) and the Judicial Code, 28 U.S.C. Section 1331 and 28 U.S.C. Section 1332, as these claims involve federal questions, are between citizens of different states and exceed the sum or value of $75,000.

6. GMI's claims arise out of or relate to actions by Defendants that are and have been purposefully directed to GMI, a Colorado resident, including Defendants' breach of multiple contracts with GMI by reason of their failure to perform certain acts in Colorado as required by said contracts. Further, GMI's claims arise out of and relate to Defendants' tortious interference with GMI's federally protected trade name and marks.

7. Personal jurisdiction is proper consistent with Section 13-1-124(1)(a) and (b), C.R.S. by virtue of Defendants' transaction of business within the State of Colorado and their commission of tortious acts within the state of Colorado and for the reasons set forth in the General Allegations below. Further, pursuant to the franchise agreements more specifically described below, Defendants have consented to the personal jurisdiction of this Court.

8.      Venue is proper consistent with 28 U.S.C. Section 1391(a)(3) as Defendants are subject to personal jurisdiction in Colorado and pursuant to the franchise agreements more specifically described below, GMI and Defendants have waived any objection either may have to venue in this Court.

## GENERAL ALLEGATIONS

9.      GMI is a franchisor of businesses that provide quick service automotive lubrication and other services throughout the United States through a unique and customized system and with federally protected trade names and marks.

10.     Since 1978, GMI has granted franchises for the operation of quick service automobile lubrication centers ("GREASE MONKEY Centers" or "Centers") under its service marks "GREASE MONKEY, The 10 Minute Lube & Oil Pros" and other trademarks, service marks, copyrights, trade dress and concepts (the "Marks") using proprietary licensed methods of doing business (the "Licensed Methods").

11.     Each GREASE MONKEY Center offers to the general public automotive oil and lubrication services, together with a preventative check and fill of all fluid levels and in addition, selective automotive products are offered for sale.  Customers are serviced without prior appointment.

12.     GMI has established a valuable reputation with the public as to the quality of its products and services.  The goodwill associated with such products and services is embodied in the Marks and has been and continues to be of unique benefit to GMI and its franchisees.

13.     By agreement, franchisees of GMI are provided a license to use the Marks and are entrusted with an Operations Manual.  In consideration of same and to protect GMI's goodwill,

the franchisees of GMI enter into franchise agreements that include, *inter alia*, certain post-termination provisions to prevent former GMI franchisees from trading on GMI's trademarks or competing with GMI after termination of the franchise relationship.

14.     GMI has numerous franchisees throughout the country who are often in contact with one another and monitor the franchise system as a whole.

15.     On about January 30, 2002, Lube Works entered into a Franchise Agreement with GMI for Center No. 774 located at 363 Highland Road, Franklin, North Carolina 28734 and expressly assumed all liabilities and obligations thereunder.  (Attached hereto as Exhibit 1 and incorporated herein by this reference.)

16.     On about January 30, 2002, Plyler unconditionally guaranteed Lube Works' full faith and performance and satisfaction of all terms, covenants and conditions of said Franchise Agreement. (*See* Exhibit III to Exhibit 1.)

17.     On about January 30, 2002, Lube Works entered into a Franchise Agreement with GMI for Center No. 775 located at 415 East Main Street, Sylva, North Carolina 28779 and expressly assumed all liabilities and obligations thereunder.  (Attached hereto as Exhibit 2 and incorporated herein by this reference.)

18.     On about January 30, 2002, Plyler unconditionally guaranteed Lube Works' full faith and performance and satisfaction of all terms, covenants and conditions of said Franchise Agreement.  (*See* Exhibit III to Exhibit 2.)

19.     On about January 30, 2002, Lube Works entered into a Franchise Agreement with GMI for Center No. 776 located at 704 Dellwood Road, Waynesville, North Carolina 28786 and

4

expressly assumed all liabilities and obligations thereunder.  (Attached hereto as Exhibit 3 and incorporated herein by this reference.)

20.     On about January 30, 2002, Plyler unconditionally guaranteed Lube Works' full faith and performance and satisfaction of all terms, covenants and conditions of said Franchise Agreement.  (*See* Exhibit III to Exhibit 3.)

21.     On about January 30, 2002, Lube Works entered into a Franchise Agreement with GMI for Center No. 777 located at 218 Avery Avenue, Morganton, North Carolina 28655 and expressly assumed all liabilities and obligations thereunder. (Attached hereto as Exhibit 4 and incorporated herein by this reference.)

22.     On about January 30, 2002, Plyler unconditionally guaranteed Lube Works' full faith and performance and satisfaction of all terms, covenants and conditions of said Franchise Agreement.  (*See* Exhibit III to Exhibit 4.)

23.     On about January 30, 2002, Lube Works entered into a Franchise Agreement with GMI for Center No. 778 located at 921 East Main Street, Lincolnton, North Carolina 28622 and expressly assumed all liabilities and obligations thereunder. (Attached hereto as Exhibit 5 and incorporated herein by this reference.)

24.     On about January 30, 2002, Plyler unconditionally guaranteed Lube Works' full faith and performance and satisfaction of all terms, covenants and conditions of said Franchise Agreement.  (*See* Exhibit III to Exhibit 5.)

25.     On about March 1, 2003, Florida Pride and Plyler opened GREASE MONKEY Center No. 779 located at 370 North Highway 11, West Union, South Carolina 29696.  Despite Florida Pride and Plyler's opening of that Center, their conduct of a GREASE MONKEY Center

at that location, and their use of GMI's Marks and Licensed Methods, they did not execute a franchise agreement, but impliedly and expressly conducted the business of that Center on the same terms and conditions and subject to the same personal guarantees as the other Centers previously opened and operated by Lube Works and Plyler.

26.     On about March 1, 2003, Florida Pride and Plyler opened GREASE MONKEY Center No. 780 located at 2107 – 2109 South Sterling Street, Morganton, North Carolina 28655. Despite Florida Pride and Plyler's opening of that Center, their conduct of a GREASE MONKEY Center at that location, and their use of GMI's Marks and Licensed Methods, they did not execute a franchise agreement, but impliedly and expressly conducted the business of that Center on the same terms and conditions and subject to the same personal guarantees as the other Centers previously opened and operated by Lube Works and Plyler.

27.     The Franchise Agreements for Center Nos. 774, 775, 776, 777, 778, 779 and 780 are referred to collectively hereafter as the "Franchise Agreements."

28.     Pursuant to the Franchise Agreements, GMI granted and conveyed to Defendants the right to use GMI's Marks and Licensed Methods at the locations designated and disclosed to Defendants its trade secrets, including those set forth in the Operations Manual. As part of the Franchise Agreements, Defendants acknowledged that they acquired no right, title or interest in such Marks except for the right to use such Marks in the operation of their Centers to the extent and in the manner authorized by GMI.

29.     Defendants agreed to immediately cease using any of GMI's Marks and Licensed Methods in the event that any of the Franchise Agreements were terminated for any reason.

30.     Pursuant to the Franchise Agreements, Defendants agreed and were obligated to comply strictly with GMI's specifications, regulations and standards and to maintain in the strictest terms of secrecy and confidentiality all of the exclusive elements of GMI's Licensed Methods, Operations Manual and methods of doing business.  Said obligations included, *inter alia*, the requirement that Defendants meet certain uniform, high quality standards for products and services, to maintain a clean, efficient and high quality GREASE MONKEY operation in accordance with GMI's Operations Manual and in such a manner as to not detract from or adversely reflect upon the name and reputation of GMI.

31.     Pursuant to the Franchise Agreements, Defendants agreed to pay GMI in Colorado on a monthly basis using standard transmittal forms supplied by GMI, a non-refundable royalty fee of 5% of the total gross receipts generated from the sale of services and products from each Center and to allocate an advertising fee of up to 6% of the total gross receipts.

32.     Pursuant to the Franchise Agreements, Defendants agreed to be bound by and subject to specific terms and conditions upon their transfer, termination, nonrenewal or default of the Franchise Agreements.

33.     Pursuant to the Franchise Agreements, Defendants agreed to be bound by certain post-termination provisions, including, *inter alia*, the following:

> Franchisee acknowledges that, pursuant to the franchise relationship established in this Agreement, Franchisee has acquired from Franchisor confidential information regarding GREASE MONKEY's Marks and Licensed Methods and that, in the event this Agreement is terminated, Franchisee could injure Franchisor, not only because it is no longer a Franchisee but, in addition, because Franchisee would be able to take those customers it has acquired over a period of time in the event Franchisee were to start another fast service automotive lubrication operation. Therefore, in the event the franchise rights granted pursuant to this Agreement are ever terminated, expire or Franchisee otherwise relinquishes all rights to the

7

franchise through assignment or otherwise, for whatever reason, neither Franchisee nor its officers, directors and owners of five percent or more of the equity securities of a corporate franchisee, for a period of three years, commencing on the effective date of termination or expiration of this Agreement, or the date on which Franchisee ceases to conduct business, whichever is later, unless authorized under another franchise agreement with Franchisor, shall (a) have any direct or indirect interest (through a member of any immediate family of Franchisee, its officers, directors and Owners of five percent or more of the stock of a corporate franchisee or otherwise) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent in, or (b) in any other capacity (i) engage in, (ii) own any assets used in, or (iii) receive any portion of the sales proceeds or net income or any other benefit from, a Competitive Business within a radius of 25 miles of the location of Franchisee's former GREASE MONKEY Center, or within a radius of 5 miles of any other GREASE MONKEY Center operating as of the date of termination or expiration of this Agreement or assignment by Franchisee.  This covenant not to compete is intended to be a reasonable restriction on Franchisee. For purposes of interpreting this covenant not to compete, every month of time and mile of distance shall be considered severable. In the event a court of competent jurisdiction interprets either the spatial or temporal limitations of this Agreement to be overly broad, then the court shall adjust the offending limitation, either by months of time or miles of distance, so as to fashion a reasonably enforceable covenant.

Defendants acknowledged that GMI, in addition to all other legal remedies available, is entitled to an injunction to enforce said provision and the other terms and conditions of the Franchise Agreements.

34.    Pursuant to the Franchise Agreements, Defendants acknowledged that if they engaged in any act in violation of the post-termination provisions, including that set forth in Paragraph 33, that it would be impossible to determine with specificity the damage to GMI. Therefore, the parties agreed that as liquidated damages and not as a penalty, within 30 days of any act in violation of such post-termination provisions, Defendants shall pay to GMI the sum of $20,000 plus 5% of the average of Defendants' monthly gross receipts over the three years immediately prior to the violation, or such shorter period if the violation occurred prior to the

third anniversary of the subject franchise agreement, multiplied by the number of full months from the date of the violation until the end of the term of same.

35.     Pursuant to the Franchise Agreements, GMI and Defendants agreed that the Franchise Agreements shall be governed by and construed in accordance with the laws of the State of Colorado.

36.     Pursuant to the Franchise Agreements, GMI and Defendants agreed that in the event of a default on the part of either party to the Franchise Agreements, the party in default will pay the aggrieved party all amounts due and all damages, costs and expenses, including reasonable attorney's fees, incurred by the aggrieved party as the result of such default, plus interest at the highest rate allowable by law.

37.     Pursuant to the Franchise Agreements, Defendants have had a long term, substantial and continuing relationship with GMI and with GMI's representatives at its principal office in Colorado.

38.     Defendants have worked directly with GMI and its representatives at its principal office in Colorado in setting and administering the policies applicable to and enforced under the Franchise Agreements and in attempting to address and resolve issues arising thereunder.

39.     Defendants purposely derived benefit from their interstate relationship with GMI and Defendants' efforts were purposefully directed toward GMI and its representatives at its principal office in Colorado.

40.     Defendants accepted and agreed to their long term relationship with GMI, reasonably foreseeing the continuing and wide reaching contacts with GMI and its Colorado

representatives and accepted and agreed to the long term exacting regulation of Defendants'

Centers from GMI's principal office in Colorado.

41.     Pursuant to the Franchise Agreements, GMI and Defendants negotiated a forum in

which to resolve any disputes which may arise between them and expressly waived any objection

either may have to the personal jurisdiction of this Court.

42.     On about March 2, 2005, Defendants notified GMI of their decision to terminate

payment of all royalties and to otherwise cease operations pursuant to the Franchise Agreements.

Such conduct constitutes non-curable breaches of the Franchise Agreements.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

43.     GMI incorporates fully by reference the allegations set forth in the preceding

paragraphs.

44.     GMI has performed its material obligations under the Franchise Agreements.

45.     Defendants have materially breached the Franchise Agreements by and including,

but not limited to, their failure to cease use of GMI's Marks and Licensed Methods upon their

claimed termination of the Franchise Agreements and their failure to otherwise satisfy their post-

termination obligations.

46.     As a direct and proximate result of Defendants' breaches of the Franchise

Agreements, GMI has been damaged and will suffer irreparable injury for which GMI has no

adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### (Misappropriation of Trade Secrets)

47.     GMI incorporates fully by reference the allegations set forth in the preceding paragraphs.

48.     GMI possesses certain confidential and proprietary information that qualify as trade secrets, including without limitation, its License Methods, procedures and Operations Manual.

49.     GMI has taken reasonable steps to keep its trade secrets confidential.

50.     Defendants have knowledge of these trade secrets and are subject to valid and binding obligations not to reveal such information to third parties or use them in competition with GMI.

51.     Defendants have misappropriated GMI's trade secrets.

52.     To the extent that Defendants have not already used or disclosed GMI's trade secrets in competition against it, there is a real and immediate threat that they will do so, and such use or disclosure is inevitable under the circumstances.

53.     As a direct and proximate result of Defendants' misappropriation of GMI's trade secrets, GMI has been damaged and will additionally suffer irreparable injury for which GMI has no adequate remedy at law unless Defendants are enjoined from continuing these acts.

## THIRD CLAIM FOR RELIEF
### (Unfair Competition)

54.     GMI incorporates fully by reference the allegations set forth in the preceding paragraphs.

11

55.     GMI owns certain proprietary Marks registered with the United States Patent and Trademark Office as service marks.  They are widely used in commerce in connection with GMI's provision of products and services.

56.     Despite their claimed termination of their relationship with GMI, Defendants have continued to use GMI's Marks in commerce in connection with their operation of quick service automotive lubrication Centers.  This misuse is a false designation of origin and a false and misleading representation of facts that is likely to cause confusion of consumers.

57.     Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), imposes civil liability on "[a]ny person who, on or in connection with any goods or services… uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of facts, which… is likely to cause confusion or to cause mistake, or to deceive."

58.     As a direct and proximate result of Defendants' actions, GMI has been damaged and will additionally suffer irreparable injury for which GMI has no adequate remedy at law unless Defendants' are enjoined from continuing these acts.

## FOURTH CLAIM FOR RELIEF
### (Trademark Infringement)

59.     GMI incorporates fully by reference the allegations set forth in the preceding paragraphs.

60.     GMI's exclusive right to use the Marks in connection with the advertising and promotion of its quick service automotive lubrication products and services is evidenced by its federal registrations of the Marks. The registrations for the Marks are in full force and effect,

12

unrevoked and uncancelled.   The registrations for the Marks are prima facia evidence of the

validity and substance of the Marks and of GMI's ownership of and exclusive right to use the

Marks in commerce without restriction or limitation.   The Marks provide constructive notice of

ownership as provided by the Trademark Act of 1946, 15 U.S.C. Sections 1057 and 1072.

61.       GMI has developed a highly successful system for the operation of fast service

automotive lubrication Centers and has devised services, procedures and programs to enable

those who license the Marks to compete more effectively in providing such services.   The

franchisees' use of the Marks inures to the benefit of GMI pursuant to Section 5 of the

Trademark Act of 1946, 15 U.S.C. Section 1055.

62.       GMI and its franchisees have developed a well-known business reputation in the

State of Colorado and throughout the United States.   The Marks have been and continue to be

widely publicized through extensive advertising in Colorado and throughout the United States.

Substantial resources have been expended in connection with such advertising.   As a result,

consumers of GMI's products and services in Colorado and throughout the United States have

come to associate the Marks used by GMI and its franchisees with services of a high and uniform

quality and the sales of products and services under the Marks have been and are substantial.

Notwithstanding Defendants' claimed termination of the Franchise Agreements and GMI's

clearly established rights in the Marks, Defendants continue to advertise and use the Marks in

connection with services substantially similar or identical to those offered by GMI and its

franchisees.   By doing so, Defendants have induced purchasers and others to believe, contrary to

fact, that the products and services offered are rendered, sponsored, or otherwise approved by, or

connected with GMI, which acts have damaged, impaired and diluted that part of the goodwill symbolized by the Marks.

63.     Defendants' use of the Marks constitutes service mark infringement within the meaning of 15 U.S.C. Section 114(1) and Defendants are willfully and deliberately infringing GMI's rights in the Marks.

64.     Defendants' acts of infringement have caused irreparable injury to GMI and its franchisees.  Unless enjoined by this Court, Defendants will continue these acts of infringement to GMI's immediate and irreparable damage.

**FIFTH CLAIM FOR RELIEF**
**(Breach of Noncompete Provision)**

65.     GMI incorporates fully by reference the allegations set forth in the preceding paragraphs.

66.     The Franchise Agreements require that for a period of three years after termination of same, Defendants not engage in a quick service automotive lubrication business, either directly or indirectly, within a radius of 25 miles of the location of Defendants' former GREASE MONKEY Centers, or within a radius of five miles of any other GREASE MONKEY Center operating as of the date of termination, either as an owner, investor, partner, director, officer, employer, employee, consultant, representative or agent or in any other manner.

67.     Defendants have breached the Noncompete Provisions by continuing to engage in and operate quick service automotive lubrication businesses that are the same as or substantially similar to the GMI franchised businesses.

14

68.     GMI is being immediately and irreparably injured by Defendants' breaches of the Noncompete Provisions.

69.     GMI has no plain, speedy, and adequate remedy at law with regard to Defendants' violations of the Noncompete Provisions.

70.     The granting of an injunction will not disserve the public interest.

71.     The balance of equities favors the granting of an injunction.

72.     The granting of an injunction in the form more specifically described below will preserve the status quo.

73.     In addition to injunctive relief, GMI is entitled to liquidated damages for Defendants' breach of the Noncompete Provisions.

**WHEREFORE**, GMI requests that it be granted the following relief:

1.     Preliminary and permanent injunctive relief enjoining Defendants and their owners, officers, directors, investors, partners, agents, servants, employees and those persons in active concert or participating with them, from engaging in the activities set forth in subparagraphs a, b, c, d, h and i and requiring them to satisfy the affirmative acts set forth in subparagraphs e, f and g as follows:

   a.     Using the Marks and any other name or Marks confusingly similar to the Marks in the advertising or sale of any products or services;

   b.     Otherwise infringing the Marks;

   c.     Diluting the distinctiveness of the Marks and otherwise injuring GMI's business reputation in any manner;

15

d.      Publishing any telephone listings using the Marks or any names or Marks containing words confusingly similar with the Marks;

e.      Pursuant to 15 U.S.C. Section 1116, the assignment by Defendants to GMI of their telephone numbers;

f.      Pursuant to 15 U.S. C. Section 1118, the delivery by Defendants to GMI of all advertisements, labels, signs, and all other materials in possession or under the control of Defendants that use the Marks or any other reproduction, copy or imitation of the Marks;

g.      Defendants' return of the Operations Manual and any copies thereof to GMI;

h.      Revealing, disclosing or utilizing GMI's trade secrets; and

i.      Directly or indirectly engaging in a quick service automotive lubrication business within a radius of 25 miles of the locations of GMI Center Nos. 774, 775, 776, 777, 778, 779 and 780 or within a radius of five miles of any other existing GREASE MONKEY Center for a period of three years, either as an owner, investor, partner, director, officer, employer, employee, consultant, representative or in any other manner.

2.   Liquidated damages pursuant to the Franchise Agreements;

3.   Reasonable attorneys' fees, expert witness fees, Court costs and other litigation expenses;

4.   Such other and further relief as the Court deems proper; and

16

5.      GMI expressly reserves all other claims which it may have and which are subject

to arbitration pursuant to the Franchise Agreements.

Dated this 17th day of August, 2005.


 s/  Jeffrey J. Cowman
Jeffrey J. Cowman
PERKINS COIE LLP
1899 Wynkoop Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 291-2300
*Attorneys for Defendant*
*Grease Monkey International Inc.*

## **VERIFICATION**

Pursuant to 28 U.S.C. §1746, I verify under penalty of perjury and the laws of the United States that the foregoing is true and correct upon information and belief.

Grease Monkey International, Inc.

By:  s/  Rex Utsler
      Rex Utsler, President and Chief Operating Officer

STATE OF COLORADO                    )
                                     ) ss.
COUNTY OF ARAPAHOE                   )

Subscribed and sworn to before me this 16th day of August, 2005, by Rex Utsler, President and Chief Operating Officer of Grease Monkey International, Inc.

Notary Public
My commission expires: _____


Plaintiff's Address:
      7100 E. Belleview Avenue, Suite 305
      Greenwood Village, CO 80111


17